THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SAM KUNAKNANA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ARMY CORPS OF ENGINEERS, et al., <br><br> Defendants, <br><br> and <br><br> CONOCOPHILLIPS ALASKA, INC., et al., <br><br> Intervenor-Defendants. | Case No. 3:13-cv-00044-SLG |

## ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Before the Court at Docket 149 is a Motion for Temporary Restraining Order and Preliminary Injunction filed by Plaintiffs Sam Kunaknana et al. Oral argument was not requested by the parties and was not necessary to the Court's resolution of the motion. For the reasons discussed herein, the motion will be denied with respect to the current construction season, but without prejudice to Plaintiffs' right to request injunctive relief with respect to future construction seasons if the Court grants all or part of Plaintiffs' pending motion for summary judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

For purposes of this motion, the Court presents only a brief overview of the key facts of this case:

The Alpine oil field, located on Alaska's North Slope, was discovered in 1994.[1] In 1998, the U.S. Army Corps of Engineers ("the Corps") issued a permit to ARCO Alaska to construct the Alpine Central Processing Facility and two drill sites, CD-1 and CD-2.[2] In 2001, ARCO's successor, ConocoPhillips Alaska, Inc. ("CPAI"), announced the discovery of additional oil to the west of Alpine in the National Petroleum Reserve – Alaska ("NPRA").[3] Thereafter, the Bureau of Land Management ("BLM") initiated a review process pursuant to the National Environmental Policy Act ("NEPA") to assess the environmental impact of CPAI's proposal to develop five drill sites: CD-3 through CD-7.[4] That review process culminated with the publication of the final Alpine Satellites Environmental Impact Statement in 2004.[5]

In December 2011, following a lengthy administrative process, the Corps issued a Record of Decision ("2011 ROD") granting CPAI a permit under Section 404 of the Clean Water Act ("CWA") to fill 58.5 acres of wetlands in order to develop CD-5.[6] CD-5 is located on lands conveyed to Kuukpik Corporation within the NPRA.[7] A portion of the filling would occur on land within the Colville River Delta,[8] an area "recognized

---

[1] Administrative Record [hereinafter A.R.] 306.

[2] A.R. 6768.

[3] A.R. 306.

[4] A.R. 191, 306.

[5] A.R. 191.

[6] A.R. 6763.

[7] A.R. 288; see also *N. Alaska Envt'l Ctr. v. Kempthorne*, 457 F.3d 969, 973 (9th Cir. 2006) (discussing the NPRA generally).

[8] A.R. 7490.

3:13-cv-00044-SLG, *Kunaknana et al. v. U.S. Army Corps et al.*
Order Denying Motion for TRO and Preliminary Injunction
Page 2 of 12

internationally for its biological diversity and richness" and "regionally for its importance to fish, wildlife, and subsistence resources."[9]

On February 27, 2013 Plaintiffs filed this lawsuit,[10] which challenges the Corps' issuance of the permit as violating the procedural requirements of NEPA, 42 U.S.C. §§ 4321–4327, and Section 404 of the CWA, 33 U.S.C. § 1344.[11] Plaintiffs are residents of Nuiqsut, an Inupiat Eskimo village located on the Nigliq Channel of the Colville River Delta, approximately 8.7 miles southwest of the CD-5 project area.[12] In the standing declarations submitted with their motion for summary judgment, Plaintiffs state that they conduct subsistence activities in the vicinity of the CD-5 project area.[13] They maintain that full compliance with the CWA and NEPA may result in a project "that will have less of an impact on the rich and productive subsistence areas [they] rely on near the CD-5 project."[14]

In the months following the filing of the Complaint, the Court permitted CPAI, the Arctic Slope Regional Corporation ("ASRC"), the State of Alaska, Kuukpik Corporation,

---

[9] A.R. 3297 (11/23/05 letter from U.S. Fish & Wildlife Service to Corps re CD-5).

[10] Docket 1 (Compl.).

[11] See Docket 117 at 1–2 ¶¶ 1–2 (Am. Compl.). The Complaint named as defendants the Corps as well as Corps' officers Thomas P. Bostick and Christopher D. Lestochi. This Order refers to all three defendants collectively as "the Corps."

[12] A.R. 451; Docket 117 at 2–5 ¶¶ 5–9 (Am. Compl.); Docket 169 at 2 ¶¶ 2–3 (Isaac Nukapigak Decl. in Supp. of Kuukpik Opp'n).

[13] See Docket 110 (Kunaknana Decl.); Docket 111 (Itta Decl.); Docket 112 (Robert Nukapigak Decl.); Docket 113 (Ahnupkana Decl.); Docket 114 (Nicholls Decl.).

[14] Docket 110 at 3 ¶ 12 (Kunaknana Decl.); Docket 111 at 3 ¶ 11 (Itta Decl.); Docket 112 at 3 ¶ 11 (Robert Nukapigak Decl.); Docket 113 at 3 ¶ 11 (Ahnupkana Decl.); Docket 114 at 3 ¶ 11 (Nicholls Decl.).

3:13-cv-00044-SLG, *Kunaknana et al. v. U.S. Army Corps et al.*
Order Denying Motion for TRO and Preliminary Injunction
Page 3 of 12

and the North Slope Borough to join this action as Intervenor-Defendants in support of the Corps.[15]

On August 14, 2013, the Court issued an Order Establishing Joint Case Management and a Case Schedule for this case and the related case of *Center for Biological Diversity v. U.S. Army Corps of Engineers*, Case No. 3:13-cv-00095-SLG. The order set a deadline of August 30, 2013 for the Corps to file any augmentation of the administrative record.[16] The order also established a schedule for the parties to file summary judgment briefs.[17]

The Corps moved for an extension of time to augment the record.[18] Plaintiffs opposed, stating they had "hoped to fully litigate the case before [CPAI] begins construction in the first quarter of 2014," but "[n]ow this goal is jeopardized and Plaintiffs will likely have to request a preliminary injunction."[19] The Court granted the Corps' motion and modified the summary judgment briefing schedule.[20] Pursuant to this modified schedule, the parties filed cross-motions for summary judgment.[21] These

---

[15] Docket 14 (Order Granting CPAI Mot. for Intervention); Docket 25 (Order Granting ASRC Mot. for Intervention); Docket 38 (Order Granting State of Alaska Mot. for Intervention); Docket 51 (Order Granting Kuukpik Corp. Mot. for Intervention); Docket 86 at 2 (Order Establishing Joint Case Mgmt.) (granting intervention to North Slope Borough).

[16] Docket 86 at 3 (Order Establishing Joint Case Management & Case Schedule).

[17] Docket 86 at 3–4 (Order Establishing Joint Case Management & Case Schedule); *see also* D.Ak. LR 16.3(c).

[18] Docket 90 (Corps Mot. for Extension of Time).

[19] Docket 94 at 3 (Opp'n to Corps Mot. for Extension of Time).

[20] Docket 96 (Order Granting Defs. Mot. for Extension of Time & Modifying Case Schedule).

[21] Docket 107 (Mot. for Summ. J.); Docket 131 (Corps Opp'n to Mot. for Summ. J.); Docket 127 (CPAI Opp'n to Mot. for Summ. J.); Docket 140 (ASRC Opp'n to Mot. for Summ. J.); Docket 141

3:13-cv-00044-SLG, *Kunaknana et al. v. U.S. Army Corps et al.*
Order Denying Motion for TRO and Preliminary Injunction
Page 4 of 12

motions became ripe on January 3, 2014, and the Court has taken them under advisement.

On February 5, 2014, Plaintiffs filed the Motion for Temporary Restraining Order and Preliminary Injunction.[22] In an affidavit filed with the motion, Plaintiffs' counsel avers that on January 28, 2014, he received a telephone call from Plaintiff Martha Itta informing him that she had heard from the BLM that CPAI had begun construction on CD-5.[23] Plaintiffs' counsel contacted CPAI's counsel, who confirmed that CPAI had begun construction.[24] In their motion, Plaintiffs assert that CPAI's construction activities "pose a threat of irreparable harm to the environment," and they request "a temporary restraining order and preliminary injunction to halt construction activities until the Court has issued an order on . . . Plaintiffs' motion for summary judgment."[25]

Pursuant to the parties' apparent stipulation and this Court's Order,[26] the Corps, CPAI, and the other Intervenor-Defendants responded to Plaintiffs' motion on February

---

(Kuukpik Opp'n to Mot. for Summ. J.); Docket 142 (State of Alaska Opp'n to Mot. for Summ. J.); Docket 143 (North Slope Borough Opp'n to Mot. for Summ. J.); Docket 146 (Reply re Mot. for Summ. J.); *see also* D.Ak. LR 16.3(c)(2) ("Defendant's principal brief in opposition . . . will be deemed a cross-motion for summary judgment . . . .").

[22] Docket 149 (Mot.). The plaintiff in the related case of *Center for Biological Diversity v. U.S. Army Corps of Engineers*, Case No. 3:13-cv-00095-SLG, has not joined in this motion or filed a separate motion for a preliminary injunction.

[23] Docket 151 at 2 ¶ 2 (Litmans Decl. in Supp. of Mot.).

[24] Docket 151 at 2 ¶¶ 3–4 (Litmans Decl. in Supp. of Mot.).

[25] Docket 150 at 7 (Mot.).

[26] *See* Docket 157 (Order re Mot.).

3:13-cv-00044-SLG, *Kunaknana et al. v. U.S. Army Corps et al.*
Order Denying Motion for TRO and Preliminary Injunction
Page 5 of 12

21, 2014,[27] and Plaintiffs replied on February 28, 2014.[28]

## DISCUSSION

I. **Jurisdiction.**

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

II. **Preliminary Injunction Standard.**

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[29] "A plaintiff seeking a preliminary injunction must establish (1) likely success on the merits; (2) likely irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest."[30] "Under the 'sliding scale' approach to preliminary injunctions observed in [the Ninth Circuit], 'the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another.'"[31] For example, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements . . . are

---

[27] Docket 160 (CPAI Opp'n); Docket 164 (ASRC Opp'n); Docket 166 (Corps Opp'n); Docket 167 (Kuukpik Opp'n); Docket 168 (State of Alaska Opp'n); Docket 170 (North Slope Borough Opp'n).

[28] Docket 172 (Reply).

[29] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

[30] *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (per curiam) (citing *Winter*, 555 U.S. at 20).

[31] *Id.* (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).

3:13-cv-00044-SLG, *Kunaknana et al. v. U.S. Army Corps et al.*
Order Denying Motion for TRO and Preliminary Injunction
Page 6 of 12

also met."[32] However, a plaintiff "must establish that irreparable harm is *likely*, not just possible," regardless of the strength of plaintiff's showing on the other three elements.[33]

When applying the four-part test for a preliminary injunction, a court may consider inadmissible evidence, such as hearsay, "when to do so serves the purpose of preventing irreparable harm before trial."[34] Additionally, the court has broad discretion to "fashion a remedy depending upon the necessities of the particular case."[35]

## III. Analysis.

### A. Likelihood of Success on the Merits.

With respect to the first prong of the preliminary injunction test, and solely for purposes of this motion, the Court assumes Plaintiffs have demonstrated that they are likely to succeed on the merits of one or more of their claims under the CWA and/or NEPA.

### B. Likelihood of Irreparable Harm.

With respect to the second prong of the preliminary injunction test, it is questionable whether Plaintiffs have shown they are likely to suffer irreparable harm in the absence of the preliminary relief they seek. Plaintiffs rely largely on their standing

---

[32] *Alliance for the Wild Rockies*, 632 F.3d at 1132.

[33] *Id.* at 1131 (emphasis in original).

[34] *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (quoting *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)).

[35] *See Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009) (quoting *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987)).

3:13-cv-00044-SLG, *Kunaknana et al. v. U.S. Army Corps et al.*
Order Denying Motion for TRO and Preliminary Injunction
Page 7 of 12

declarations filed in October 2013 to demonstrate irreparable harm,[36] but these declarations do not indicate the extent to which the current construction activities are harming or will harm Plaintiffs' subsistence interests.[37] Additionally, the fact that Plaintiffs waited to file their motion until two months after CPAI began its construction season militates against a finding of irreparable harm.[38] Nonetheless, solely for purposes of this motion, the Court will assume Plaintiffs have met their burden of showing that their subsistence interests are likely to be irreparably harmed as a result of the construction activities taking place this winter and early spring at CD-5. CPAI is presently installing bridge and sheet pilings and blasting to open the gravel mine site,[39] activities that could damage the environment in ways that irreparably harm Plaintiffs' subsistence interests.[40]

---

[36] *See* Docket 150 at 12 (Mot.) ("[T]he impacts to Nuiqsut Plaintiffs include impacts to their subsistence way of life and enjoyment that are being irreparably harmed from Conoco's construction activities, as set forth in the Nuiqsut Plaintiffs' standing declarations.").

[37] Plaintiffs have not provided the Court with any firsthand information regarding how CPAI's current construction activities are impacting them.

[38] *See Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."); *Protect Our Cmtys. Found. v. U.S. Dep't of Agric.*, 845 F. Supp. 2d 1102, 1113–14 (S.D. Cal. 2012) (holding plaintiffs failed to demonstrate irreparable harm in part because they waited to file their motion for preliminary injunction until the day construction began, despite advance knowledge of when project was scheduled to commence).

[39] Docket 161 at 4 ¶¶ 8–9 (Brodie Decl. in Supp. of CPAI Opp'n).

[40] *See Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 545 (1987) ("Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often . . . irreparable.").

3:13-cv-00044-SLG, *Kunaknana et al. v. U.S. Army Corps et al.*
Order Denying Motion for TRO and Preliminary Injunction
Page 8 of 12

## C. Balance of the Equities and Public Interest.

A court cannot "abandon a balance of harms analysis just because a potential environmental injury is at issue."[41] Rather, this Court "must weigh the environmental injuries invoked by [Plaintiffs] against the other injuries identified by the [Corps and Intervenor-Defendants]."[42] Here, even assuming Plaintiffs have shown likely success on the merits and likely irreparable harm for purposes of this motion, the balance of the equities tips so far in favor of CPAI and the other Intervenor-Defendants at this time that a preliminary injunction halting this season's construction activities is not warranted, nor would it be in the public interest.[43]

As Plaintiffs appear to recognize in their motion, even prior to the issuance of the 2011 ROD, CPAI had announced its intent to begin construction at CD-5 during the 2013–2014 winter.[44] Moreover, in May 2012 and August 2013, CPAI held community meetings in Nuiqsut and indicated its intent to begin construction during the 2013–2014 winter.[45] According to Lisa Pekich, Director of Village Outreach for CPAI, Plaintiff

---

[41] *Lands Council v. McNair*, 537 F.3d 981, 1005 (9th Cir. 2008) (en banc), *overruled in part on other grounds by Am. Trucking Ass'ns, Inc. v. City of L.A.*, 559 F.3d 1046 (9th Cir. 2009).

[42] *See id.* at 1004; *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) ("[T]he district court has a 'duty . . . to balance the interests of all parties and weigh the damage to each.'" (quoting *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980))).

[43] *Cf. Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 23–24 (2008) (declining to address plaintiffs' likelihood of success on the merits and holding "even if plaintiffs have shown irreparable injury," that injury is outweighed by defendant's and the public's interests).

[44] *See* Docket 150 at 8–9 n.14 (Mot.) (citing A.R. 5867, a 10/19/11 letter from CPAI to the Corps, as "indicating Conoco will construct the gravel satellite pad, gravel road, bridge piers and substructure, and possibly the vertical support members for the pipeline in the first quarter of 2014").

[45] Docket 163 at 2–3 ¶¶ 4–5 (Pekich Decl. in Supp. of CPAI Opp'n).

3:13-cv-00044-SLG, *Kunaknana et al. v. U.S. Army Corps et al.*
Order Denying Motion for TRO and Preliminary Injunction
Page 9 of 12

Clarence Ahnupkana attended the May 2012 meeting, and Plaintiffs Sam Kunaknana, Martha Itta, and John Nicholls attended the August 2013 meeting.[46] In their briefing, Plaintiffs do not dispute that they attended these meetings.

In September 2013, in opposition to the Corps' motion for an extension of time to augment the record, Plaintiffs demonstrated their awareness of CPAI's intent to begin construction in the first quarter of 2014.[47] But Plaintiffs did not request a preliminary injunction at that time. In the months that followed, CPAI continued publicly to take steps to begin construction during the 2013–2014 winter.[48] Then, when the construction season was well underway, Plaintiffs filed their motion for a preliminary injunction. In doing so, it appears CPAI is correct that Plaintiffs waited "until the moment it would inflict the maximum possible damage and disruption to [CPAI]."[49]

Because the 2014 ice road season is expected to last for only 13–15 weeks, CPAI estimates that stopping work for as little as one week might cause it not to reach its construction milestones for the 2014 season, which could necessitate an additional winter season of work costing an estimated $105 million.[50] The Court agrees with CPAI

---

[46] Docket 163 at 2–3 ¶¶ 4–5 (Pekich Decl. in Supp. of CPAI Opp'n).

[47] Docket 94 at 3 (Opp'n to Corps Mot. for Extension of Time) (stating on September 3, 2013 that Plaintiffs had "hoped to fully litigate the case before [CPAI] begins construction in the first quarter of 2014," but "[n]ow this goal is jeopardized and Plaintiffs will likely have to request a preliminary injunction").

[48] Docket 163 at 3 ¶¶ 6–9 (Pekich Decl. in Supp. of CPAI Opp'n) (discussing 11/6/13 meeting with Kuukpik Subsistence Oversight Panel—at which Plaintiff Sam Kunaknana was present—11/7/13 CD-5 job fair in Nuiqsut, 12/2/13 Facebook announcement, and 1/14/14 kickoff meeting in Nuiqsut).

[49] See Docket 160 at 5 (CPAI Opp'n).

[50] Docket 161 at 6–10 ¶¶ 12–13, 20 (Brodie Decl. in Supp. of CPAI Opp'n). Plaintiffs assert that "[e]ven if an injunction would cause Conoco some financial hardship, economic harm is not

3:13-cv-00044-SLG, *Kunaknana et al. v. U.S. Army Corps et al.*
Order Denying Motion for TRO and Preliminary Injunction
Page 10 of 12

that "the cost of unplanned demobilization, staging, and remobilization of material that could be installed in 2014 is wasteful."[51]

In addition to the harm to CPAI, it appears the other Intervenor-Defendants would likely be adversely affected if CPAI were forced to stop work in the middle of this construction season.[52] For example, residents from various North Slope Borough communities, including Kuukpik shareholders who live in Nuiqsut, could lose their jobs and income needed to buy subsistence equipment.[53] Additionally, the Corps' interest in "the orderly administration of [its] environmental permitting process" could be harmed.[54]

The disruption a mid-season work stoppage would cause could even result in more environmental damage than if CPAI continued work through the end of this construction season.[55] Under these circumstances, and given the Plaintiffs' long delay

---

irreparable and, as a matter of law, does not override the threat of likely irreparable environmental harm." Docket 150 at 15 (Mot.). However, the Ninth Circuit has stated that "[e]conomic harm may indeed be a factor in considering the balance of equitable interests." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) (on appeal of denial of preliminary injunction to halt post-wildfire logging in a national forest, holding district court did not err in determining "the economic stakes, in combination with the safety concerns and reforestation efforts, outweighed any harm to environmental interests").

[51] Docket 161 at 9 ¶ 17 (Brodie Decl. in Supp. of CPAI Opp'n).

[52] *See* Docket 165 (Imm Decl. in Supp. of ASRC Opp'n); Docket 168 (State of Alaska Opp'n); Docket 169 (Isaac Nukapigak Decl. in Supp. of Kuukpik Opp'n); Docket 170-1 (Brower Decl. in Supp. of North Slope Borough Opp'n)

[53] Docket 169 at 7 ¶ 14 (Isaac Nukapigak Decl. in Supp. of Kuukpik Opp'n); Docket 170-1 at 3–4 ¶ 13 (Brower Decl. in Supp. of North Slope Borough Opp'n). More broadly, stopping work in the middle of the current construction season would threaten the jobs of up to 800 individuals currently working on the CD-5 project. *See* Docket 161 at 5 ¶ 10 (Brodie Decl. in Supp. of CPAI Opp'n).

[54] *See* Docket 166 at 13 (Corps Opp'n).

[55] *See* Docket 161 at 6 ¶ 12 (Brodie Decl. in Supp. of CPAI Opp'n) (noting "incomplete bridge and road installations" could result in "incomplete protection against erosion during breakup"); Docket 165 at 2 ¶ 4 (Imm Decl. in Supp. of ASRC Opp'n) (explaining how preliminary injunction

3:13-cv-00044-SLG, *Kunaknana et al. v. U.S. Army Corps et al.*
Order Denying Motion for TRO and Preliminary Injunction
Page 11 of 12

in filing for a preliminary injunction despite their knowledge that construction on CD-5 was set to begin during the 2013–2014 winter, the issuance of a preliminary injunction at this time would be clearly inequitable and not in the public interest.[56]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, at Docket 149, is DENIED.[57]

DATED this 12th day of March, 2014, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

"would result in serious environmental risks related to the ASRC Gravel Site"); Docket 169 at 6 ¶ 12 (Isaac Nukapigak Decl. in Supp. of Kuukpik Opp'n) ("[H]alting construction now, in the middle of the season, would just extend the time it would take to complete the project . . . and thereby create more and greater disruptions to the environment and to our subsistence way of life, than if the project is allowed to proceed and the work scheduled for this winter completed.").

[56] In their reply, Plaintiffs assert they filed their motion "almost immediately after learning that Conoco had begun construction," and "[i]t would have been improper to bring a motion for injunctive relief earlier because any alleged harms would have been speculative and any threats would not have been actual or imminent." Docket 172 at 10 (Reply). However, Plaintiffs were not required to wait until construction began to file their motion, particularly where for over two years CPAI consistently declared its intention to begin construction on CD-5 during the 2013–2014 winter. *See W. Watersheds Project v. Salazar*, 692 F.3d 921, 923 (9th Cir. 2012) (holding in balancing the equities, the district court "properly exercised its discretion in weighing Appellant's delay in seeking a preliminary injunction until after construction began . . . and some $712 million had been expended"); *Protect Our Cmtys. Found. v. U.S. Dep't of Agric.*, 845 F. Supp. 2d 1102, 1113 (S.D. Cal. 2012) (where plaintiffs had four months advance notice of date construction would begin, holding plaintiffs "were not required to wait until construction . . . began to file the Motion for Preliminary Injunction"); *cf. Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 737 (1998) (noting that because NEPA is a procedural statute, "a person with standing who is injured by a failure to comply with the NEPA procedure may complain of that failure at the time the failure takes place, for the claim can never get riper").

[57] This denial is without prejudice to Plaintiffs' right to request injunctive relief with respect to future construction seasons if the Court grants all or part of Plaintiffs' pending motion for summary judgment.

3:13-cv-00044-SLG, *Kunaknana et al. v. U.S. Army Corps et al.*
Order Denying Motion for TRO and Preliminary Injunction
Page 12 of 12